

IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

JAIME O. PEREZ AND CARL M. STARR,
Plaintiffs,

v.

JAMES R. CLAPPER, ERIC H. HOLDER,
and JAMES B. COMEY, all in their
Individual and Official Capacities,
Defendants.

EP14CV0050

COMPLAINT

1. This is a Bivens action brought pursuant Bivens v Six Unknown Federal Agents against Federal Defendants for violation of Plaintiffs' Constitutional First, Fourth and Fifth Amendment Rights. Plaintiffs seek money damages of $1. Bench Trial requested. A Magistrate is ok.

PARTIES

2. Plaintiffs: Plaintiff Jaime O. Perez, B.A. Brandeis University, M.A. University of California Berkeley. Perez is an activist and owner of political views wakeupcallnews.com and broadcasted over AM radio. Perez is a member of Libertarian Party of El Paso. Perez is a political consultant and uses cellphones in Perez's activities and consultant work. Perez is currently a registered candidate for U.S. Congress 16th Congressional District. Perez address is: Jaime O. Perez 7600 Franklin Dr., El Paso TX 79915.

3. Plaintiff Carl Starr is a legal civil rights activist with Honors from U.S. Congress, Texas Senate, Texas Attorney General, Texas State Bar and Oklahoma State Law Enforcement as well as being a whistleblower while in Law Enforcement. Starr has 120 College Hours and is a NLG.org member and Certified Paralegal Certificate holder. Starr uses cellphone accounts in his activities and also does ad-hoc pro-bono legal research for attorneys. Starr address is: Carl M. Starr, P.O. Box 1561, El Paso, TX 79948.

4. Defendants: Defendant James R. Clapper is the Director of National Intelligence ("DNI"). DNI Clapper has ultimate authority over all the activities of the intelligence community including the NSA Bulk Metadata Telephony Program [BMTP] and can be served at: Office of the Director of National Intelligence, Washington D.C. 20511. Defendant Eric H. Holder is the Attorney General of the United

States. Attorney General Holder has ultimate authority over the Department of Justice and the Federal Bureau of Investigation ("FBI") and is responsible for overseeing the FBI participation in National Security and BMTP and can be served at: 555 Fourth St. NW Washington, DC 20530. Defendant James B. Comey is the Director of the FBI and responsible for FBI's actions under the BMTP and can be served at: FBI, 935 Pennsylvania Avenue, NW Washington, DC 20535.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action by reason of 28 USC 1331. Venue is proper in this district pursuant to 28 U.S.C. 1391 as the Plaintiffs reside in this district and complained actions occurred at minimum partially in this district and complained of records generated from this district and the Defendants have substantial ties to this district.

## STANDING

6. Plaintiffs have standing under Article III. And have suffered an injury because they are current cell phone subscribers whose communications have already been monitored by the government and whose communications continue to be monitored. The injury is plainly traceable to the conduct they challenge—that is, to the government's collection of Plaintiffs records. To any extent a government argument is that the "mere" collection of Plaintiffs' call records does not inflict an injury, that argument goes to whether Plaintiffs have a reasonable expectation of privacy—*that is, to the merits—not standing.* As the Supreme Court has observed, the definition of Fourth Amendment rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."Carter,525 U.S.83 As a recent federal court stated "indeed *everyone's* metadata is analyzed, manually or automatically".

*From PEN.org "In an effort to illuminate the NSA's effect on free expression, PEN American Center recently surveyed its U.S. members on their feelings about the NSA's unbounded reach. The resulting report, "Chilling Effects: NSA Surveillance Drives US Writers to Self-Censor," reveals that 88% of the writers polled are troubled by the NSA's surveillance programme, and that 24% have avoided certain topics in email and phone conversations. Most disturbingly, 16% of those answering the survey said they had abandoned a project given its sensitivity."*

## INTRODUCTION, BACKGROUND AND FACTS

7. This is an action for monetary relief as a result of the Government's illegal and unconstitutional use of an electronic surveillance program in violation of the First, Fourth, and Fifth Amendments of the U.S. Constitution. In addition, this lawsuit challenges and the Plaintiffs sue the Government's expansive acquisition of Plaintiffs' telephone records under Sec 215 of the Patriot Act, 50 USC 1860 and the

legality of a secret and illegal scheme to intercept and analyze vast quantities of communications. The NSA's surveillance program is an internal Government computer system used to manage domestic and foreign intelligence collected from electronic service providers. Government officials have indicated this program has been in place for seven years and that it collects records of all communications companies including Verizon, AT&T, and Sprint. The Government has acknowledged that it is collecting "metadata" of every phone call made or received by residents of the United States, and these records provide intricate details, including the identity of the individual who was spoken to, the length of time of the conversation, and where the conversation took place. Moreover, it gives the Government a comprehensive record of an individual's associations, speech, and public movements while revealing personal details about an individual's familial, political, professional, religious, and intimate associations. Such telephony metadata includes comprehensive communications routing information, including but not limited to session identifying information (e.g. originating and terminating telephone number, International Mobile Subscriber Identity (IMSI) number, International Mobile Station Equipment Identity (IMEI) number, etc.) trunk identifier, telephone calling card numbers, and time and duration of call.

8. On June 5, 2013, The Guardian published an article about Snowden entitled, "NSA collecting phone records of millions of Verizon customers daily. Exclusive: Top secret court order requiring Verizon to hand over all call data shows scale of domestic surveillance." The U.S. Government obtained a top secret court order that directs Verizon to turn over the telephone records of over one hundred million Americans to the Defendants on an ongoing daily basis. This order is believed to be the broadest surveillance order to ever have been issued; it requires no level of reasonable suspicion or probable cause and incredibly applies to all subscribers and users anywhere in the United States and overseas. Prior to this disclosure and revelation, Plaintiffs had no notice and no reasonable opportunity to discover the existence of the surveillance program or the violation of the laws alleged herein. Such broad and intrusive collections and surveillance tactics directly violate the U.S. Constitution and also federal laws, including, but not limited to, the outrageous breach of privacy, freedom of speech, freedom of association and the due process rights of American citizens. Plaintiffs are suing for money damages to help stop the illegal activity and hold the Defendants, individually and collectively, responsible for their illegal surveillance, which has violated the

law and damaged the fundamental freedoms of American citizens. The Defendants in concert with the Government have subjected untold number of innocent people to the constant surveillance of Government agents. Recently a Federal Court agreed, calling the Government's program "almost Orwellian" and stating that the Court "cannot imagine a more 'indiscriminate' and 'arbitrary invasion'.

## STATEMENT OF CLAIM

9. Intrusive and illegal surveillance has directly impacted each Plaintiff. The revelation that the Government has been carrying on widespread interception of cellphone communications has impaired Plaintiffs' ability to communicate out of fear their confidential, private, and often privileged communications are being and will be overheard by the surveillance program. The program involves two searches, the bulk collection of metadata and the analysis of that data through querying process. The Plaintiffs as cellphone subscribers have had their cellphone metadata collected for last seven years and stored for the last five and it will continue to be collected barring judicial or legislative intervention.

10. Plaintiffs' Complaint states a claim that the mass call-tracking program is unlawful under the First, Fourth and Fifth Amendment. Telephony metadata reveals personal details and relationships that most people customarily and justifiably regard as private. The government's long-term recording and aggregation of this information invades a reasonable expectation of privacy and, therefore, constitute a search. This search violates the Fourth Amendment because it lacks any of the usual indicia of reasonableness. Americans do not expect that their government will make a note, every time they pick up the phone, of whom they call, precisely when they call them, and for precisely how long they speak. Nor should they have to. See, United States v. Gordon, 236 F.2d 916, 919 (2d Cir. 1956); Neil M. Richards, The Dangers of Surveillance, 126 Harv. L. Rev. 1934, 1934 (2013) (Until recently, "the threat of constant surveillance has been relegated to the realms of science fiction and failed totalitarian states.").

11. Plaintiffs have an expectation of privacy in their telephony metadata. This kind of surveillance, at issue here, hands the government a comprehensive record of Americans' associations, revealing a wealth of detail about their familial, political, professional, religious, and intimate relationships—the same kind

of information that could traditionally only be obtained by examining the contents of communications. For example, certain telephone numbers are used for a single purpose, and their use can reveal a person's religion, addiction to gambling or drugs, experience with rape, or support for particular political causes. Aggregating metadata across time can yield an even richer repository of personal and associational details. Each Plaintiff has experienced a decrease in communications from those who had desired the fact of their communication to Plaintiffs remain secret, especially from the government and its various agencies. Plaintiffs have lost the ability to assure others who seek to communicate with them, that the fact of their communications to Plaintiffs will be kept confidential. This injury stems not from the disclosure, but from the existence and operation of the program itself. Before the public disclosure of the program, Plaintiffs' assurances of confidentiality were illusory. Plaintiffs have a reasonable expectation of privacy in their telephone communications, including in their telephone communications information. By the acts alleged herein, Defendants have violated Plaintiffs' reasonable expectations of privacy and denied Plaintiffs their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States, including, but not limited to, obtaining per se unreasonable general warrants. Defendants are now engaging in and will continue to engage in the above-described violations of Plaintiffs' constitutional rights, and are thereby irreparably harming Plaintiffs.

12. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless money damages help correct the behavior via this suit and others suits. The Fourth Amendment requires "a neutral and detached authority be interposed between the police and the public," and it is offended by "general warrants" and laws that allow searches to be conducted "indiscriminately and without regard to their connection with [a] crime under investigation." Berger, 388 U.S. 41 As a Federal Court recently stated in part: "I cannot imagine a

more "indiscriminate" and "arbitrary invasion" than this systematic and high-tech collection and retention of personal data on virtually every single citizen for purposes of querying and analyzing....surely such a program infringes on "that degree of privacy" that the Founders enshrined in the Fourth Amendment. Indeed, I have little doubt, James Madison, who cautioned us to beware "the abridgement of freedom of the people by gradual and silent encroachments by those in power," would be aghast.

13. *First*, section 215 requires the things collected to be "relevant to an authorized investigation", but the mass collection of all telephone calling records and retention of those records for a period of five years is outside the scope of any notion of relevance. The government admits that the vast majority of the phone records it collects have nothing whatsoever to do with terrorism.

14. *Second*, section 215 is a general statute and is, therefore, superseded in relevant part by the more specific Stored Communications Act, 18 U.S.C. § 2701, *et seq*. ("SCA"). Section 2702 and 2703 of the SCA specifically apply to telephone records and list the exclusive means for the government to obtain such records from service providers. Sections 2702 and 2703 of the SCA do not authorize the government to obtain records through section 215 of the PATRIOT Act. Sec 2709 of the SCA, however, expressly authorizes FBI to obtain call records using national security letters, but does not allow mass collection.

15. *Third*, section 215 applies only to the production of "tangible things." The words "tangible things" has a plain meaning: corporeal things, that is, things that can be felt or touched. The electronic telephone data the government collects on an ongoing basis is an intangible thing. Independently, the mass call detail records collection program violates the First Amendment. First Amendment rights of freedom of association are burdened when the government seeks to collect the identities of the participants in an expressive association and the fact of communications among them. In such situations, the government must use the least restrictive means available to collect the information it needs so as to minimize the impact on the associational liberty. Mass suspicionless collection of information cannot satisfy this test.

16. Section 215 does not expressly state that it authorizes mass collection of telephone records. It does not use the terms "bulk" or "mass" collection or otherwise suggest that the government may obtain "all" of a

telephone service provider's calling records. Such words would have made the Congressional intent clear and the statutory language plain. Any such words also would have sparked an actual public discussion of the advisability of mass collection of innocent Americans' telephone records at the time the law was enacted and likely again when it was reauthorized. The fact that no such discussion occurred, and indeed is loudly and prominently occurring now, any application for an order must contain "a statement of facts showing that there are reasonable grounds to believe that the tangible things sought are relevant to an authorized investigation (other than a threat assessment)." 50 U.S.C. § 1861(b)(2)(A). Second, any order compelling such production "may only require the production of a tangible thing if such thing can be obtained with a subpoena *duces tecum* issued by a court of the USA in aid of a grand jury investigation.

17. A plaintiff asserting a chilling effect of this type need show only a causal nexus between the government's acquisition of the information and the self-censorship. In this case, each plaintiff has suffered a concrete and actual associational injury: each plaintiff has lost the ability to assure its members, supporters and constituents the fact of the telephonic communications between them will be kept confidential. Plaintiffs need to communicate with their constituents without the government's knowledge the communications have taken place, and their constituents likewise value and often require that the government not know that they are communicating with plaintiffs.

18. This mass collection is not even remotely "carefully tailored." It is not tailored at all. The government may certainly conduct targeted surveillance of individuals suspected of having ties to international terrorism, and it has many means by which to do so. But the mass collection of telephone records reveals all the information that the Supreme Court objected to in *Shelton* – social, professional, political, vocational, or religious – and not just from a comparatively narrow group like teachers, but from all Americans who have a telephone. One of the most important ways the government collection of telephone records is unconstitutional: it violates the First Amendment right of association. When the government gets access to the phone records of political and activist organizations and their members, it knows who is talking to whom, when, and for how long. This so-called "metadata," especially when

collected in bulk and aggregated, tracks the associations of these organizations. After all, if the government knows that you call say People for the American Way or say Students for Sensible Drug Policy regularly, it has a very good indication that you are a member and it certainly knows that you associate regularly. The law has long recognized that government access to associations can create a chilling effect—people are less likely to associate with organizations when they know the government is watching and when the government can track their associations.

19. The First Amendment right of association is a well-established doctrine that prevents the government "interfering with the right to peaceably assemble or prohibit the petition for a governmental redress of grievances." The most famous case embracing it is a Supreme Court Case from the Civil Rights era called *NAACP v. Alabama*. In that case the Supreme Court held that it would violate the First Amendment for the NAACP to have to turn over its membership lists in litigation. The right stems from the simple fact that the First Amendment protects the freedom to associate and express political views as a group. This constitutional protection is critical because, as the court noted "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association[.]" *NAACP v. Alabama*, The collection and analysis of telephone records give the government a broad window into associations. The First Amendment protects against this because, as the Supreme Court has recognized, "it may induce members to withdraw from the association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of their exposure." Privacy in one's associational ties is also closely linked to freedom of association: "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." The Court has made clear infringements on freedom of association may survive constitutional scrutiny only when they "serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."

20. Here, the wholesale collection of telephone records of millions of innocent Americans' communications records, and thereby collection of their associations, is massively overbroad, regardless

of the government's interest. Thus, the NSA spying program fails under the basic First Amendment tests that have been in place for over fifty years. As a recent Federal Court stated "Because the Government can use daily metadata collection to engage in "repetitive, surreptitious surveillance of a citizen's private goings on," the NSA database "implicates the Fourth Amendment each time a government official monitors it."39 Johnson, 440 F.3d at 498-99 (distinguishing DNA profile in a law enforcement database — which is not searched each time database is accessed — from a "constantly updating]" video feed, and warning that "future technological advances in DNA testing . . . may empower the government to conduct wide-ranging `DNA dragnets' that raise justifiable citations to George Orwell"). Plaintiffs raise a claim under section 215 of the PATRIOT Act since the government is misinterpreting the statute—it does not allow bulk collection and searching without individual judicial approval. Plaintiffs also raise a Fifth Amendment claim for informational privacy and for vagueness, since the secret court rulings by the court overseeing the spying, the Foreign Intelligence Surveillance Court, give neither the public nor law enforcement clear rules and limits on their ability to surveil Americans.

## CAUSES OF ACTION-BIVENS ACTION
### FIRST CLAIM FOR RELIEF -Fifth Amendment Violation

21. Plaintiffs repeat and re-allege all of the previous allegations above. Plaintiffs enjoy a liberty interest in their personal security and in being free from the Defendants' use of unnecessary and excessive force or intrusion against their person. Plaintiffs enjoy a liberty of not being deprived of life without due process of law, vague/overbroad laws, as guaranteed by the Fifth Amendment to the US Constitution. Defendants violated Plaintiffs constitutional rights when they authorized broad and intrusive collections of records of individuals via the Bulk Telephony Metadata Program, thereby giving the Government and themselves unlimited authority to obtain phone data. By reason of the wrongful conduct of the Defendants, each and every one of them, jointly and severally, Plaintiffs suffered and continue to suffer from severe emotional distress and physical harm, pecuniary and economic damage, loss of services, and loss of society accordingly. As a direct and proximate result of the intentional and willful actions of the Defendants, plaintiffs ask judgment be entered against Defendants each and every one of them, jointly and severally.

### SECOND CLAIM FOR RELIEF-First Amendment Violation

22. Plaintiffs repeat and re-allege all of the previous allegations above. Defendants acting in their official

capacity and personally, abridged and violated Plaintiffs' 1st Amendment right of freedom of speech and association by significantly minimizing and chilling Plaintiffs' freedom of expression and association. Defendants acts chill, if not "kill," speech by instilling in individuals fear that their personal and business conversations with other U.S. citizens are in effect surveilled, tapped, and illegally surveyed. In addition, Defendants acting in their official capacity and personally, violated Plaintiffs' right of freedom of association by making them and others weary and fearful of contacting other persons and entities via cell phones out of fear of the misuse of Gov't power and retaliation against these persons and entities who challenge the misuse of Gov't power. By reason of the wrongful conduct of these defendants, Plaintiffs suffered and continue to suffer from severe emotional distress and physical harm, pecuniary and economic damage, loss of services, and loss of society accordingly. As a direct and proximate result of the intentional and willful actions of the Defendants, Plaintiffs ask that judgment be entered against the Defendants each and every one of them, jointly and severally.

### THIRD CLAIM FOR RELIEF-Fourth Amendment Violation

23. Plaintiffs repeat and re-allege all of the previous allegations above. The 4th Amendment provides in pertinent part that people have a right to be secure in their persons against unreasonable searches and seizures, that warrants shall not be issued but upon probable cause, and the place of search must be described with particularity. Defendants acting in their official capacities and personally, violated the 4th Amendment to the Constitution when they unreasonably searched and seized and continue to search Plaintiffs' phone records and electronic communications without reasonable suspicion or probable cause. Defendants acting in their official capacity and personally, violated the 4th Amendment to the Constitution by not describing with particularity the place to be searched or the person or things to be seized. Collection and production of the phone records allows Defendants including the FBI, CIA, and NSA to easily and indiscriminately build a comprehensive picture and profile of any individual contacted, how and when he or she was contacted, and possibly from where, retrospectively and into the future. By reason of the wrongful conduct of Defendants, Plaintiffs suffered and continue to suffer from severe emotional distress and physical harm, pecuniary and economic damage, loss of services/society.

## PRAYER FOR RELIEF;

Plaintiffs ask that judgment be entered against Defendants, each and every one of them, jointly and severally because of Defendants' illegal actions causing this demonstrable injury to Plaintiffs with reckless indifference. Acting under color of law defendants actions via an arbitrary and capricious policy or unwritten practice constituted an unlawful deprivation of and infringement upon Plaintiffs rights in violation of the Constitution of the United States. Plaintiffs request this Court assume jurisdiction over this cause and grant them nominal money damages of one dollar and any other relief under equity/law the court chooses to give. Plaintiffs have attempted to obtain counsel. In rare cases the court can appoint Plaintiffs an attorney in Public Interest cases and Plaintiffs ask that the court do so here as the matter is complex and Plaintiffs are laypersons and the matter is of great public interest.

Respectfully Submitted,  *[signature]* 2-5-14  *[signature]* 2-5-14

I declare under penalty of perjury the forgoing is true to the best of my knowledge/information/belief.
*[signature]* 2-5-14   *[signature]* 2-5-14
Jaime O. Perez, 7600 Franklin Dr. El Paso, Texas 79915  jaimeoperez@yahoo.com
Carl M. Starr, PO Box 1561, El Paso, Texas 79948  carlstarr@hotmail.com

```
DUPLICATE

Court Name: TEXAS WESTERN
Division: 3
Receipt Number: 300018416
Cashier ID: vmedina
Transaction Date: 02/05/2014
Payer Name: JAIME O PEREZ
-------------------------------------
CIVIL FILING FEE
 For: JAIME O PEREZ AND CARL M STARR
 Amount:        $400.00
-------------------------------------
MONEY ORDER
 Check/Money Order Num: 106091733803
 Amt Tendered:  $400.00
-------------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00

CIVIL FILING FEE,
DTXW314CV000050-001

JAIME O PEREZ AND CARL M STARR v.
JAMES R. CLAPPER, et al.

KC / NJG
```